WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joe Hand Promotions Incorporated, | No. CV-15-00152-PHX-SMM |
| Plaintiff, | **ORDER** |
| v. | |
| Shelley L Spain, et al., | |
| Defendants. | |

Pending before the Court is Defendants' Motion for Summary Judgement. (Doc. 30.) Plaintiff has responded and the motion is fully briefed. (Docs. 32, 33.) Pursuant to the Case Management Order, the scope of the motion for summary judgement is limited to the issue of the Internet defense.[1] (Doc. 24) The Court will grant the Motion.

## I. FACTUAL BACKGROUND[2]

Defendant Axe Capoeira ("Axe") is a small local martial arts and dance studio located in Tempe, Arizona. (Doc. 30-2 at ¶2.) At the time of the events giving rise to this lawsuit, Axe was owned by Axe Capoeira Arizona, LLC, a company in which Defendant Julius L. Spain had an ownership interest.[3] (Id.) On February 1, 2014 Axe exhibited *Ultimate Fighting Championship 169: Renan Barao v. Urijah Faber* ("the Program") via

---

[1] The validity of Defendants' defenses which are outside the scope of the Internet defense are not discussed here.
[2] The following facts are undisputed unless otherwise noted.
[3] It is disputed whether or not Plaintiff Shelley L. Spain had an ownership interest in Axe at the time of the events giving rise to this law suit, however the determination of this fact is outside the scope of this Order.

the Internet using an Xbox device. (Id. at ¶3.) Axe did not advertise that the Program was being shown that evening. (Id. at ¶6.) "It was . . . shown at a social gathering that was taking place at the establishment outside the normal operating hours. There were students present at the time and kids." (Id.) An investigator sent by the Plaintiff observed 22 people at the gathering. (Doc. 32-2.) There was no cover charged to access Axe during the showing and the gathering did not generate revenue. (Doc. 30-2 at ¶6.)

Plaintiff Joe Hand Promotions, Inc. ("Joe Hand"), pursuant to a contract with Zuffa, LLC d/b/a Ultimate Fighting Championship ("UFC"), had exclusive nationwide commercial closed circuit television distribution rights to the Program. (Doc. 32-4 at 10.) According to the contract, UFC retained its absolute rights to show the Program to "residences, hotel rooms, dormitories, military base residential living, and all similar locations, via any and all means and modes of pay-per-view television, Internet, wireless, broadband, and all other means or modes now known or hereafter developed." (Id. at 11) Defendants purchased the Program from the website UFC.TV for $48.72. (Doc. 32 at 4.) Plaintiff brought this lawsuit asserting Axe's display of the Program was unlawful under 47 U.S.C. §§ 553 and 605. (Doc. 1.) [4]

A Rule 16 Case Management Conference took place on August 13, 2015 before Judge David G. Campbell. (Doc. 23.) Thereafter, the Court issued a Case Management Order that directed the Parties to conduct discovery and file a motion for summary judgement on the narrow issue of whether Defendants' streaming of the program over the Internet constitutes a valid defense to Plaintiff's claims (i.e. the Internet defense). (Doc. 24.) The order stated that if the case should survive summary judgement on the Internet defense, a second case management hearing would take place to discuss the next steps of discovery. (Id.) Subsequently, the matter was reassigned to this Court.

---

[4] Plaintiff is a frequent litigator, repeatedly bringing allegations of unauthorized display of similar programs.

## II. STANDARD OF REVIEW

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see also Jesinger, 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Id.; see Jesinger, 24 F.3d at 1130.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." Celotex, 477 U.S. at 323-24. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir. 1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial. See Celotex, 477 U.S. at 323-24. The party opposing summary judgment need not produce evidence "in a form that would be admissible at trial in order to avoid summary judgment." Id. at 324. However, the nonmovant "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-88 (1986); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).

## III. ANALYSIS

47 U.S.C. § 553(a)(1), governing the unauthorized reception of cable services states:

> No person shall intercept or receive or assist in intercepting or receiving any communications services offered over a *cable system*, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

(emphasis added).

47 U.S.C. § 605, governing the unauthorized publication or use of communications states in pertinent part:

> . . . No person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication *by wire or radio* shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception. . .
>
> No person not being authorized by the sender shall intercept any *radio* communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by *radio* and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted *radio* communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

(emphasis added).

The Ninth Circuit has not opined on the distinction of signals received via cable and satellite, nor has it decided whether Sections 553 and 605 encompass signals transmitted over the Internet. District courts in the Ninth Circuit have, however, held that section 553 applies only to cable signals, and section 605 applies to satellite signals. See e.g., J & J Sports Prods., Inc. v. Man Thi Doan, No. C-08-00324 RMW, 2008 WL 4911223 (N.D. Cal. Nov. 13, 2008) ("A signal pirate violates section 553 if he intercepts a cable signal, he violates 605 if he intercepts a satellite broadcast.")

- 4 -

"A majority of the circuit courts of appeals, as well as district courts within the Eighth Circuit, interpret sections 605 and 553 to be mutually exclusive. These courts hold that section 605 applies to the interception of satellite or radio transmissions, whereas section 553 applies to the interception of transmissions via cable systems. Nonetheless, '[t]o establish liability under either § 553 or § 605, a plaintiff must prove that a defendant unlawfully exhibited, published or divulged a privileged communication and the signal transmitting that communication was delivered to the intercepting party by way of a satellite or cable transmission.'" Joe Hand Promotions, Inc. v. Ridgway, No. 6:14-CV-03401-MDH, 2014 WL 7005239, at *2 (W.D. Mo. Dec. 10, 2014) citing Joe Hand Promotions, Inc. v. Peterson, No. 8:12CV241, 2014 WL 824119, at *3 (D.Neb. Mar.3, 2014).

Defendants seek summary judgement on the Internet issue, asserting that neither Section 605 nor 553 applies to signals received over the Internet. (Doc. 30.) Since the Program was purchased with authorization through the website UFC.tv and broadcasted using an Xbox device rather than a cable system or satellite transmission, Defendants contend that neither federal statue applies. (Id.)

In support of their position, Defendants cite Joe Hand Promotions, Inc. v. Cusi, No. 3:13-CV-935-MMA-BLM, 2014 WL 1921760 (S.D. Cal. May 14, 2014), a case with facts notably similar to those in this matter. In Cusi, a gym displayed an Ultimate Fighting program purchased on an Internet site. The plaintiff, also Plaintiff in this case, brought suit claiming violation of the same statutes alleged here. In Cusi, the defendants argued that since "they purchased the Event over the internet . . . their actions [could not] be governed by statutes designed to combat interceptions of satellite or cable signals." (Id.) The Cusi court granted the defendant summary judgement not because the defendant had streamed the program via the Internet but because the plaintiff failed to demonstrate the type of internet used to stream the program. (Id.)

Defendants assert that here, like in Cusi, because no cable or satellite signal was intercepted, received, or exhibited, there is no case for the alleged type of signal piracy Sections 553 and 605 prohibit. Plaintiff argues that Defendants drew erroneous parallels

between Cusi and the facts in this case. (Doc. 32 at 5-6.) Plaintiff acknowledges that the Cusi court was "skeptical that feeds received over the internet from a third party violate Sections 553 or 605" but states that this is merely dicta and that that case did not reach the ultimate issue that Defendants rely on. (Id. (citing Cusi).)

Defendants misinterpreted the court's decision in Cusi, where summary judgement was granted not because the program was streamed via the Internet, but rather because the plaintiffs did not show what type of Internet connection was used to stream the program and therefore could not meet their burden of proof under either statute. Plaintiff asserts that the Court should instead look to the case Zuffa, LLC. v. Kamranian, No. 1:11-CV-036, 2013 WL 1196632, at *9 (D.N.D. Mar. 25, 2013) for instruction on the Internet defense issue.

In Zuffa, a sports bar streamed a UFC event from *firstrowsports.com*, a third party website that did not have authorization to exhibit it. (Id.) Further, the defendants did not purchase any license to display the program at the bar. (Id.) The plaintiff brought a claim asserting a violation of Section 605. (Id.) The defendant produced evidence that the program was streamed using a cable internet system. (Id.) The court found that the defendants did not violate Section 605 by displaying an Internet stream through a cable internet service, since Section 605 covered radio and satellite signals, not cable signals. (Id.) Plaintiff here suggests that the defendant in Zuffa may have been found in violation of Section 553, but the plaintiff did not sue under that particular statute.

Plaintiff's attempt to use Zuffa in support of its argument is misplaced. First, the facts in Zuffa differ from the facts in this case. In Zuffa, the defendant streamed the event from a third party website without authorization to show the UFC event. Here, however, Defendants lawfully purchased the Program from UFC.tv. Second, Plaintiff speculates a different, more desirable outcome for the plaintiff in Zuffa had it brought a claim under Section 553. The Court cannot make a finding for Plaintiff based on this speculation.

The Court finds that Sections 605 and 553 are inapplicable in this case. These statutes, originally enacted in 1934, were intended to prevent pirate interception of radio, satellite, and cable signals. Here, Defendants purchased the Program from UFC.tv, an

authorized distributor of the Program. Even if sections 605 and 553 did extend to Internet streaming, there is no evidence of unauthorized signal reception or interception, nor is there evidence that the Program was used for an unauthorized purpose despite being shown at a non-residential venue. Plaintiff does not meet its burden of proof under either statute. See Celotex, 477 U.S. at 323-24.

According to the contract between UFC and Defendant, Defendant is the "exclusive distributor of commercial closed circuit television of the Events" but does not have the exclusive rights to show the Program over the Internet.[5] (Doc. 32-4 at 10.) UFC retains the rights to show this and other similar programs "via any and all means and modes of pay-per-view television, Internet, wireless, broadband, and all other means or modes. . ." (Id. at 11.) If anything, issues of breach of contract and licensing may exist, but those are matters beyond the scope of this lawsuit. Therefore, because the Court finds that there are no genuine issues of material fact and the Internet defense is valid, Defendants are entitled to judgement as a matter of law.

## IV. CONCLUSION

Accordingly, based on the foregoing reasons,

**IT IS HEREBY ORDERED GRANTING** Defendant's Motion for Summary Judgement. (Doc. 30.) Both of Plaintiff's claims are dismissed with prejudice. The Clerk of Court is directed to enter judgement accordingly.

Dated this 4th day of August, 2016.

Honorable Stephen M. McNamee
Senior United States District Judge

---

[5] Parties did not brief the issue of standing. Although this Court may determine such jurisdictional issues on its own, it will refrain from doing so based on the above findings.

- 7 -